Johnson, J.
By section 7129 Revised Statutes : “A sheriff, deputy sheriff, constable, marshal or deputy marshal, watchman or police officer, shall arrest and detain any ■person, found violating any law of this state, or any legal ordinance of a city or village until a legal warrant can be obtained.”
By section 1847, the marshal of municipal corporations is the chief ministerial officer of the corporation.
By section 1848, he is to execute all writs and process, etc.
By section 1849, he is to arrest all disorderly persons in the corporation; suppress all riots, disturbances and breaches of the peace; pursue and arrest any person fleeing from justice in any part of the state; arrest any person in the act of committing any offense against the laws of *344 the state or ordinances of the corporation, and forthwith bring such person before the mayor or other competent authority for examination or trial. ■
These two sections (1849 and 7129) provide what a marshal of a municipal corporation may do as a conservator of the peace without a warrant.
Section 1849 is the same as section 142 of the municipal code of 1869 (66 Ohio L. 178), where the authority extends to the arrest of any person “in the act of committing an offense.”
Section 7129 is copied from 66 Ohio L. 291, section 21 of the code of criminal procedure, where the words are, “ any person round violating,” etc.
Section 1849 is the primary source of a marshal’s authority, and if there was any substantial difference in the words “ in the act of committing any offense ” and “ found violating any law,” as found in section 7129, the former would be adopted if necessary to protect the officer.
But we think there is no substantial difference. Under either, the citizen is protected from arrest without warrant to the same degree as under the other. Both greatly enlarge the power to arrest without warrant in cases of misdemeanors from what it was at common law, where a constable had original and inherent power to arrest for breach of the peace, or for felony actually committed, etc., or in the act of committing treason or felony, etc. 4 Black. Com. 292*; Hale P. C. 587; 1 Bishop, §§ 167, 168.
Section 1849 is, in legal effect, the common-law rule as to arrests by sheriffs and constables without warrant, made applicable to- other crimes than treason, felony, or breach of fhe peace.
[With respect to the charge given, there was evidence tending to show that the deceased was marshal of the village of Wilmington and known to Ballard to be such at the time of the attempted arrest and shooting; that Ballard was on the streets of the town, carrying concealed weapons contrary to law; that he discharged the pistol killing the mar *345 sbal while he was engaged in resisting the arrest. In making the arrest for carrying such weapons, the marshal acted on information and belief, and not from actual personal knowledge of the facts. This information, which proved to he true, was based upon such statements of fact, and from such sources as would warrant a prudent man in acting. Under these circumstances, we think the officer was in the performance of official duty. This does not authorize such an arrest without warrant on a mere venture, without knowledge or reliable information, though in fact, as afterward discovered, concealed weapons were found.
The accused was “ in the act of committing an offense,” within the purview of section 1849, and “ was found violating a law of the state,” within the terms of section 7129. The accused was committing a concealed crime, not one open to view, and hence the greater necessity of acting on knowledge or information. Good faith, an honest belief, based upon reliable information, which proves to be true, is all the law requires. "We need not inquire what is the law, if the information is false and the party is innocent, as that question is not before us. Even in such a case, where the official character of the officer, as well as the reason for the arrest, is known to the party arrested, it would be no defense to a charge of manslaughter if he purposely took the life of the officer to prevent his arrest. In such a case it would rather be his duty to yield obedience to the efforts of the officer, trusting to the law for his redress, when there is no apparent danger to life or of great bodily harm.
Upon a careful consideration of the charge of the court upon this point we think there is no error.

Motion overruled.

Okey, J., dissented.